GUNDRY v. SCRIMGER.

1. PARTNERSHIP—ACCOUNTING—EVIDENCE SUFFICIENT TO ESTABLISH PARTNERSHIP.

In a suit for the purpose of establishing a partnership and asking for its dissolution and an accounting, where defendant filed a cross-bill admitting said partnership and alleging another partnership and asking for its dissolution and an accounting, the finding of the court below that said partnership existed, held, sustained by the record.[1]

2. SAME—INTEREST IN PARTNERSHIP ESTABLISHED.

Where plaintiff testified that he had invested $3,300 of his own money in the business, and admitted receiving $300 from defendant, which he claimed was a loan merely, the finding of the court below that defendant was entitled to a one-eleventh interest in the business as a partnership was justified.[2]

3. SAME—SALE OF BUSINESS ON DISSOLUTION OF PARTNERSHIP.

Although plaintiff was entitled to a sale of the business on dissolution of the partnership, where the court below adjudicated the rights of the parties without ordering a sale, and no question as to the court's power to do so is raised on appeal, the Supreme Court will not interfere with the decree of the court below.[3]

Appeal from Genesee; Black (Edward D.), J. Submitted October 21, 1925. (Docket No. 97.) Decided June 7, 1926.

Bill by James E. Gundry against George Scrimger for the dissolution of a partnership and an accounting. Defendant filed a cross-bill admitting the existence of said partnership and asking for the dissolution of another partnership and an accounting. From a decree for defendant, plaintiff appeals. Affirmed.

[1]Partnership, 30 Cyc. p. 749; [2]Id., 30 Cyc. p. 737; [3]Id., 30 Cyc. p. 749.

*A. M. Cummins,* for plaintiff.

*George W. Cook,* for defendant.

STEERE, J. Plaintiff filed this bill of complaint in the circuit court of Genesee county, in chancery, alleging a partnership between himself and defendant in a retail gasoline and service station in the city of Flint, located at 1610 Detroit street, praying for an accounting and dissolution of said partnership. Defendant answered admitting the existence of said partnership and further answering by way of cross-bill alleged a partnership existed between them also in a wholesale gasoline and oil business conducted in the city of Flint under the name of the Genesee Oil Company, located near the Pere Marquette tracks on Second street, west, in the city of Flint, in which he originally invested $1,500, praying for an accounting and dissolution of that partnership also. Plaintiff answered said cross-bill denying any partnership existed between them in the Genesee Oil Company and alleged that whatever money defendant had furnished for it was but borrowed. After the parties rested at the close of the hearing the court announced to counsel his conclusion that a partnership existed between the parties in both companies and stated he would hold that the partnership in the service station on Detroit street, having proved unprofitable, should be dissolved, but expressed an opinion that the Genesee Oil Company, being an established, profitable business, should be maintained, and suggested that some arrangement between the parties should be made to that end, as an absolute decree by the court of dissolution and accounting might tend to work financial injury to one or both the parties. The following colloquy between court and counsel concluded submission of the case:

"*The Court:* It is the duty of the Genesee Oil Com-

pany to keep the station running. If these people can arrange this matter between themselves, I would be glad to have them.

"*Mr. S*— (Attorney for plaintiff): What about the Genesee Oil Company? Aren't we going to dispose of that?

"*The Court:* You want to dispose of that?

"*Mr. S*—: What about the interest of Mr. Scrimger?

"*The Court:* He can retain his interest.

"*Mr. S*—: The cross-bill asks for dissolution.

"*The Court:* I don't think I will dissolve the concern. The Genesee Oil Company is a going concern, making money. The other concern is not making money. If Mr. S—, Mr. C— and Mr. W— get together they can get more out of it. I would suggest that Mr. Scrimger take his out of the concern.

"*Mr. S*—: Aren't we entitled to a dissolution when we filed a bill?

"*Mr. C*— (Attorney for defendant): I think in view of the findings of the court we can agree to buy or sell.

"*The Court:* I think you ought to.

"*Mr. C*—: There is a thing the court has not mentioned. There has been a loss on the gasoline station, a loss of something over $2,000; that loss should be borne by each.

"*The Court:* Yes. I think if the attorneys and parties get together they can make more than by fighting."

The case having been thus submitted, nothing further appears of record until about a month later, when, on February 27, 1925, a decree was signed and filed by the court, finding a partnership existed between the parties in the Detroit street gasoline service station which must be dissolved, as alleged, and admitted in their pleadings, and that a partnership also existed between them in the Genesee Oil Company, which likewise must be dissolved; that in the accounting between the parties, for which testimony was taken on the hearing, plaintiff should take over the assets and business of both partnerships and pay defendant

for his found one-eleventh interest therein $5,540.30, payable in installments as follows: $1,000 on filing the decree and $500 on the 27th of each succeeding month until the amount in full, with seven per cent. interest on deferred payments, was paid, with costs to defendant to be taxed, including $154.24, fees of an expert witness.

The record is silent as to what, if anything, took place between the parties or their counsel in pursuance of the court's suggestions, or by whom this decree was drawn or what took place when it was settled. Counsel who represented plaintiff in the court below and counsel in this appeal are not the same. Counsel for defendant claims it may be assumed, "that this decree was agreed upon by the parties and their attorneys," and that it is also safe to assume "plaintiff afterwards became dissatisfied and employed other counsel and an appeal was taken." No direct reply is made to that claim, and no concession or comment appears in the brief of plaintiff's counsel in this appeal as to the circumstances of signing and filing the decree. The points argued are for its modification. They are that the court erred in finding defendant's interest in the Genesee Oil Company was a one-eleventh interest; that the court erred in crediting defendant with $949.21, being one-quarter of a cent per gallon allowed him personally on all gasoline bought by him from the Genesee Oil Company for the Detroit street service station, of which he had charge, claiming the allowance should be to the partnership and not to him personally; and the court erred in not finding, as the evidence showed, that certain payments made at his request to defendant by plaintiff, late in 1922, as manager of the Genesee Oil Company, terminated whatever interest defendant had in that company.

The parties to this suit are brothers-in-law. Both had experience in the gasoline selling and service

station business before they entered into any partnership relations, defendant mostly as an employee, and plaintiff as a promoter and dealer.

Plaintiff had made several apparently unprofitable ventures in that line, but finally, in the spring of 1922, he promoted a wholesale and retail business on West Second street in Flint, dealing in gasoline, kerosene, cylinder and fuel oil and other allied commodities, which proved profitable. He tells a fluctuating story as to events and his financial circumstances at that time. He testified that he "furnished the capital for that business," and later in telling how he raised the funds to start it, said:

"At that time I did not have a cent, no, sir. I had all my money in the Western Oil & Gas Company. I had to borrow practically every dollar that went into that business. It was when I started in that business that I borrowed from Mr. Barnacott, Mr. Scrimger and Mr. Fuller."

About that time a Mr. Molosky took an interest in the initial project, called the Independent Oil Company or the Lincoln Oil Company, and advanced some funds. Incorporation of the enterprise was mooted but did not materialize as differences arose between plaintiff and Molosky over the former putting into the capital account of the company a second-hand truck at $2,000, which Molosky appraised at only a fraction of that amount, and he withdrew, making a settlement with plaintiff and starting business by himself as the Lincoln Oil Company. Plaintiff said he made a profit on that settlement of $1,000, which he put into the Genesee Oil Company, the capital for which he computed at $4,300, including $2,000 for his second-hand truck.

His account of the preliminaries in this organization are somewhat confusing as to dates, and names of companies partly organized or proposed. His story

in general indicates that to get the company settled down to a successful business basis some delicate financiering was done. But under his guidance the Genesee Oil Company seems to have expanded rapidly and profitably. About the time he began maneuvering on this project, in the spring of 1922, he obtained $300 from Scrimger, who was in charge of the service station at 1610 Detroit street, working for its then owners. Plaintiff admits obtaining this money from him and putting it into the Genesee Oil Company, but claims that it was a loan upon which he was to pay seven per cent. interest and a proportionate share on the profits of the company until he paid the money back, which he did, and that he is the sole owner of that company, having satisfactorily adjusted his indebtedness with all from whom he secured funds to start it. Defendant testified that he early paid the $300 for an interest in the proposed venture at plaintiff's solicitation, and paid more later on; that nothing was said about a loan at that time, and no such understanding existed as plaintiff claimed; that when they were talking of incorporating it was understood he would be one of the directors, but the business went ahead in plaintiff's name and he retained his interest in it. He knew the business was prospering and expanding but when he asked plaintiff for more definite information he always put him off, claiming he had not yet figured it up.

On the issue of partnership, plaintiff produced, in support of his contention that the $300 was but a loan, a check reading as follows:

"Industrial Savings Bank, Union Street Office, Flint, Michigan, October 18, 1922. Pay to the order of George Scrimger $300.00.

"J. E. GUNDRY."

There also appears upon the face of this instrument: "Payment of loan made to J. E. Gundry." But one

receipt was produced by Scrimger, which was for the first payment of $200. Plaintiff admitted receiving $100 more shortly thereafter. When confronted with the first and only receipt in evidence he admitted it was given by him. It reads as follows:

"April 27, 1922. Received of George Scrimger, $200, Two Hundred and no/100 Dollars. Interest in storage plant to be operated by the Independent Oil Company.

"JAMES GUNDRY."

Defendant testified that he knew the company was making money when he applied to plaintiff and obtained the $300 check in the fall of 1922; that plaintiff had told him his investment was earning him practically $18 per hundred per month, or $54 a month, and, needing the money to complete a payment he was owing, he obtained the check but there was then no suggestion that he was withdrawing his investment and he had no idea of selling his interest in the property.

It is shown the business grew rapidly and became very profitable, and claimed this led Gundry to conceive the idea of calling his check of $300 to defendant payment of a loan, later making notations so indicating on this and on another small check for $40. He testified that these notations were made when he issued the checks, while defendant testified positively that no such writing was on the checks as they passed through his hands.

An expert of long experience, who examined and photographed the checks, testified and demonstrated from indications he pointed out in confirmation of defendant's contention.

Upon the issue of partnership we are in accord with the following conclusions of the lower court:

"I am going to hold that is a partnership and I do that for the reason that the testimony of Mr. Scrimger

and the receipt that he had for the first $200 bears out that theory, and for the further reason that on October 18th, 1922, there was a check given to Mr. Scrimger for $300, which was the original amount of his investment.    Later, on December 15th, there was an additional check for $40.00 signed by Mr. J. E. Gundry, and it is the testimony of an expert that they have been retraced, and the fact that there is an underwriting on the check for $300, which reads as follows: 'Payment on loan made to J. E. Gundry,' which was written after the check was made and delivered and went through the clearing house.    That the check dated December 15th, 1922, for $40.00 has an underwriting 'money loaned to J. E. Gundry.'    I do that because I believe after the business had become a success, Mr. Gundry wanted to make this money a loan instead of a partnership.    I think when they started in if any loss had been made, Mr. Scrimger would have lost his money along with Mr. Gundry's."

In finding defendant had a one-eleventh interest in the Genesee Oil Company all doubts appear to have been resolved in plaintiff's favor.    He testified that the capital of the company when it started was $4,300, and he borrowed practically every dollar which went into it; that he borrowed $1,000 of it from Mr. Fuller and paid him out of the profits of the business, and said his own investment in the business was $3,300, of which $2,000 was the used truck which Molosky appraised at $700 or $800.

Careful audits of accounts of these two companies were made by qualified accountants.    It was shown, apparently without dispute, that the Detroit street service station was operated at a profit for a time, but for the period of its existence up to November 4, 1924, its balance sheet showed a loss of approximately $2,000, while the balance sheet of the Genesee Oil Company disclosed a rapid and profitable growth, its total profits to June 28, 1924, being over $66,000.

The controlling questions in this case are issues of fact.    It would profit nothing to review them further.

There was ample evidence to support the result reached in the decree rendered and we find no occasion to disturb it on the questions argued in the brief of plaintiff's counsel, which raises no question as to the power of the court to adjudicate the rights of the parties to a finality without ordering sale of the partnership property, to which plaintiff would otherwise be entitled on dissolution of the partnership.

On the points argued the decree is affirmed, with costs to defendant.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.